The next case for argument is 23-1245, Lashify v. ITC. Lashify v. ITC Good morning. Please proceed. Good morning. May it please the Court, Saina Shamalov on behalf of the appellant, Lashify. There are two issues here on appeal. There is one with respect to economic industry determination below and one with respect to claim construction issue. I'll start with economic industry first, if it's all right, and then end with a claim construction issue. On the economic industry issue, it's really at issue the language of Section 337A.3.B. It says domestic industry exists if you can show substantial employment of labor or capital. Now, below, the Commission found that there was no showing of substantial investment in labor or capital for two reasons, predominantly. One, it excluded sales and marketing investments, and then it excluded warehouse and distribution investments. Now, there's nothing all solely based on the wrong interpretation and reading of the statute. There's nothing in the language, it's plain language, it's very clear. There's nothing in the language that says you have to exclude certain things. Now, the Commission said you have to exclude sales and marketing at all from labor and capital unless you have to show some substantial other investments. There's nothing in the statute supporting that analysis. With respect to warehouse and distribution, the Commission's analysis was you cannot consider those investments because Lashify does not manufacture the domestic products in the U.S. Again, there's nothing in the statute with respect to exclusion of those. Now, below, and even here in the appeal, there's no dispute that if you would consider the categories that were excluded, that the investments were substantial. I think that there's no dispute here. Was that an issue that was litigated in the ITC before the ALJ or to the Commission? Because I'm trying to figure out whether if we concluded that the categorical exclusion of the warehousing and the marketing was incorrect, whether we outright reverse on economic prong or whether we remand for consideration of the significance question. Understood, Your Honor. You will reverse determination, and the defense did it correctly if you look at the two Commissioners' opinion. There was no, below, in front of the ALJ, the other side never argued that the investments were not substantial. The only argument was the categorical exclusion of sales and marketing and warehouse and distribution expenses based on erroneous reading of this language of the statute. So wouldn't the ALJ or Commission still have to make an affirmative determination? Because the, below the ALJ and the Commission, there is nothing in that opinion that says that the investments are not substantial. They looked at them, right? The one with determination. They made no determination. They never evaluated, I guess, the strength of that data. So it's unclear whether we could say that, therefore, there's definitely a domestic industry. I think in the absence of a challenge that was not substantial, there was no challenge below at all to the substantiality of the investments, right? There is no basis for the Commission to say the investments are not substantial. And even just commonsensically, right, it's in the record and in front of the Commission, the investments increased year over year. It's millions of dollars of the investments in the United States, right? So the decision below was solely categorical exclusion. Can I ask you, on substantial, what is the test that you would advocate or that you think the Commission has adopted? I mean, are we looking exclusively at you, at the one company? Do we look at it industry-wide? Do we, I mean, because none of that analysis was done here, was it? Correct. But I think there is the substantial, and the Commission before has done many analyses, right, on that issue. And then this board, for example, talked about quantitative and qualitative factors you would take into consideration. I think if you were determining substantiality, you would look at the nature of the product, right, the nature of the industry, the nature of the company, then you look at the total number of dollar figures that are put in and quantitatively and see, for example, do they increase year over year, right? Or, you know, the court said there was no particular benchmark or it's not a bright rule of determined substantiality, but there are ways to determine whether the dollar figures themselves were substantial. Well, I guess I'm a little troubled by just looking at whether the dollar is substantial, particularly in a case such as your client where you've got a relatively small business. So dollars could be insubstantial themselves, but a substantial portion of the value of the company, and is that the test that you're looking at? That's one test. I mean, I think there are several ways of how you can quantitatively look at whether a dollar figure is substantial. But do you think that because they've ever challenged that, so just if you're right on domestic industry and we agree with you, then it's done? I think that's right, but there's no challenge at all as to substantiality below. Let me ask you, in your view, would there ever be a situation in which sales and marketing expenses alone can show economic domestic industry? I don't know the exact answer to that question, Your Honor, because I think it will depend on the nature of the product and the nature of the business and what type of marketing, for example, it is, right? Like if it's pure traditional marketing or marketing where they teach a particular aspect of the product of how to use because it's now a new product on the market and people just don't know how to use it correctly. I don't know, but that's not an issue in this case for this court where it needs to get to because undisputedly this case does not involve only sales or marketing expenses. There are different other expenses before the issue that the court, that they allegate and the commission addressed and considered below. In your view, what does capital mean? How do we define capital? I think capital is costs and expenses and investments that relate to stock of product and how you move that stock of product. I base that answer on some language that this court included in the Leela opinion, for example, when talking about capital investments. A stock of accumulated goods? It's costs associated with stock of accumulated goods and moving the stock of accumulated goods. For example, I think that… So it doesn't include sales and marketing expenditures. In capital, that would all go in labor? I think that would go in labor. For the capital, things like price shipping. For example, things that we've included below in the capital expenditures would be something that you would consider. Is it your view that sales and marketing would always fall within labor or there's some type, subtypes of sales and marketing that actually don't fall within labor or capital? The reason why I ask is because obviously we all know about the lead up to the 1988 amendment. Clearly, sales and marketing was put into subsection C and then yanked out. And so sales and marketing… It's suggesting that sales and marketing maybe by itself isn't good enough, but does that suggest that maybe there are some kinds of sales and marketing that just don't fit within labor or capital? There might be perhaps some sales or marketing expenses that may not be labor or capital depending on the particular companies. If you just put out a mass internet blast repeatedly, which costs you almost nothing but is serious, serious marketing to 100 million people, why would that not be sales and marketing and yet not be significant labor or capital? Which would be a helpful point for you in distinguishing what happened in the legislative history leading to the 1988 amendments, right? I think if the sales and marketing, like in the example in this hypothetical, were minimal, then you would fail the substantiality tests, right? So the way the statute is written here with respect to what happened with C doesn't necessarily… Am I hearing you agree with Judge Toronto? Because Judge Toronto basically put a finer point on what was going on behind my question. I might have missed the point. You want to say in diminishing the significance or the inferences to be drawn from the 1988 legislative history, namely what Judge Chen mentioned, there was once a reference to sales and marketing, and then it was I think the technical expression was yanked out. And by saying, well, removing all, that is removing a provision that would cover all sales and marketing is not the same as precluding some of that when there is significant – the word is significant in this provision, right? Not substantial, right? Significant labor and capital. And so it's useful to think about whether there is a category of significant sales and marketing that wouldn't be labor and capital. And that was my internet example. Understood, Your Honor. I think the reason why I might have answered not in the best way is that I don't think that yanking out the sales and marketing from C affects what you can consider as labor or capital as part of the B language, which isn't referred to that. And moreover, if you would consider the legislative history, the history says you can't rely on sales and marketing alone. Now, if you have sales and marketing plus others, I think there, again, in our situation, and maybe there are others that would be slightly different, but in our situation you can look at sales and marketing along with other things. You don't need to point to it. You mentioned a couple of times in your brief the, I don't know, appealing fact that your principal was the inventor. Why does that matter under the statutory provisions we're talking about? I think that if I understood the question correctly, Your Honor, I think it matters because when you determine once you've allocated the labor and capital expenses under subsection B, you then have to look at them, whether they're substantial, right? And then you look quantitatively and qualitatively, for example. But you can't do that in the statute. You have to look at what is this company and how it came to be, because the whole point of the statute is to protect domestic companies. Here we have the situation here. We have one woman who got the idea and then worked around the clock, who ended up being the inventor, to start this company up, right, and then filed the patents and got the patents and now has a company, a real company. Is that what we consider a qualitative factor? I think it's part of the qualitative factor. It's also part of the quantitative factor. If you have to take into consideration quantitatively, what is the nature of the business and the product? And I'll give you one example of that, right? For example, the commission says, well, this case is nothing like the percussive equipment case, because there was, you know, repair was, you know, the company was doing repair, for example, under warranties after that. And here there is no repair. But you have to take into consideration the nature of the product. We're talking about one-use lashes that you put on, you wear them for a few days and you dispose them. There will be no repair, right? So you have to take into consideration how the company came to be and what their business is and what they're doing to determine that. Is it fair to say that the inventor's hero journey, that's really more relevant to the qualitative factor, not the quantitative factor? I think generally, yes. Because, you know, I'm trying to isolate out what we need to think about over here on this side of the bench when it comes to interpreting the statute. And, you know, you've got a story, you've got a nice sounding narrative and I'm trying to figure out, well, how is that really actually relevant? What if this inventor wasn't someone from the United States, from California and tried to grow the business here in the United States, but was a woman in China, in Shanghai, and she did everything there. And now we're left with looking at sales and marketing, warehousing costs, things that probably any importer would have to face. Then how do we think about that kind of a fact pattern? Is it your view that, well, we have to go down on the qualitative factor, but maybe because the quantitative elements are just as strong as yours, that that person, that company would satisfy the quantitative factor? I think that in any scenario under the statute, you have to look at what is done on labor capital expenses, dollar figures that happen here and determine where the substantial, and then look at them qualitatively as to the nature of the industry, the nature of the business. So going back to my fact pattern, what's the answer? Well, in that case, under quantitative determination, if in that hypothetical, there was the same amount of expenses in the domestic industry as here, I think quantitatively in that hypothetical, there would be substantial investments. Now, then qualitatively, the court may decide differently and say, well, the industry is different, and the qualitative analysis may be different. But this is a situation. To what degree are we here today, is the court confronted with the qualitative factor question? Or is it merely that never really got fully ventilated and what this case on appeal is just narrowly about is the quantitative factor and whether it was correct or incorrect under the statute to exclude sales and marketing, warehouse costs, et cetera? Well, I think that the majority's opinion below does not talk about neither quantitative nor qualitative factors at all. I think the substance of that, you can see that it's probably focused on quantitative without calling it that way. But if you look at the dissent opinion, and there was, again, no challenge to the qualitative aspects below at all on the domestic industry. It was all about just wholesale exclusion of categories of information before any analysis. So I don't think that needs to be the issue in front of the court is, was there a substantial investment on the B if you take appropriate, you know, if you read the language correctly, and that would include both quantitative and qualitative analysis, and the dissent did it correctly below. I see that I'm out of time. This one quickly. Yeah, we should cover claim construction. I will be very brief there, Your Honors. I think the issue with the claim construction is the inclusion of the single entity requirement that then went and permeated all the infringement analysis and technical domestic industry analysis. The judge correctly determined that melting was not required, for example, and then that single entity was used later to say, well, melting is required. And single entity requirement is not an infringing record. It was plucked from a single dictionary, and there's nothing in the certification, anywhere in the infringing record talking about that heat fusion requires merging or making of fibers into a single entity. All required is connections that are resulting because you use heat. Just curious, hypothetically, if we were to send back the economic problem, but affirm the claim construction, and thereby saying that the technical problem wasn't met for the 984 patent, do you still have, in your view, a legitimate case for the domestic industry requirement for the two design patents? Yes, Your Honor, because the domestic industry, the technical domestic industry was not related to the claim construction issue. So the only thing is the economic domestic industry. Whatever expenditures that you think are labor and capital, there are sufficient amounts that are devoted to just the two design patents and not the 984. Correct, Your Honor. The per patent allocation, the allocation that we're appealing, the determination of allocations per patent was correct. So, yes, if the claim construction is against us, but the economic industry is remanded back for the two design patents, those issues would be right for the resolution. On your challenge of single entity, what would you, I'm having a hard time finding out what's wrong with that. If heat fusion is the centerpiece of all of this, you end up with the single entity when you fuse several things together. I guess I understood some of your arguments, but I didn't see how they played into the choice of the word single entity. They seem to be going around other issues, but not that one in particular. Yeah. So the way that single, so the court below said it's single entity, and the reason why it has to be single entity is because it cannot be easily separated. Okay. I do agree with that. I mean, let's see, I don't think you think you're selling lashes and they're just flying off the minute you touch the piece of it. So in terms of not easily separated, that too, I don't see why that should be a centerpiece of an issue here. I think the issue, why this is an issue here, because on the infringement side and a technical domestic industry side, the analysis that the other side performed, they sold these lashes into acetone, took metal instruments, and then tore them apart. They pulled the basis and pulled the things apart and said, you see, it was easily separated. The reason that the single entity and the easily separated requirement is against the intrinsic evidence, because you could have heat fuse connections without merging the two fibers together completely and making them a single entity, because heat fusion does not, there are different degrees of heat fusion that occur. Heat fusion, and I have plenty in the record where both sides agree, takes place even on a molecular level. When you have commingling, when you're saying single entity, you're saying you could have heat fusion, but they would never be together? They would be connected, but they would not become a one mass. What happens, and if the single entity becomes how the court construed it and then used it, it becomes very clear how they apply this term and what they said the scope is of the construction with respect to technical, domestic industry and infringement. They said, you have, there is no melting, the temperatures are not high enough, melting does not occur, so these things, two fibers, do not become a single mass in effect. There is nothing in this intrinsic record supporting that. All it requires is... I mean, I guess it seemed to me, if I'm remembering correctly, that the ALJ was really relying on one thing. If the fibers have to be fused, fusing means something more than they are now somehow tied together. You know, the way, I don't know, two wheels with an axle between them are, they're not fused, but they are connected and that can't be. So the whole point of fusing is something like, these fibers now have to be merged, or I forget, there were some other synonyms, but connected is not enough. And if what you do is put, you know, glue between them, so the fibers never touch, but there's an intermediate connecting glue, that's not fusing. I think,  the issue of the fuse does not require, does not require maybe some merging, but it can be at a molecular level, not to combine the two things into one single mass, right? And the construction that we're advocating for is not just connection, is you're connecting using heat. So heat has to contribute to connection. In that case, when heat contributes to the connection and you're using polymers, you will have commingling of the, on the molecular level or broad, or layered. In either the, Lashify's product for technical prong or the accused products, is there that kind of molecular sharing? We've, there was, we've put on evidence and testing of molecular sharing. But I thought I saw the ALJ decision, the solvent test,  And then there were images of what happens after the solvent, where the hairs, they don't look in any way, merged. I, I guess it's the word I would use. And then secondly, there was the, I don't know, microscope images, which showed, still clear boundaries between all of the individual hairs. And I guess what I'm trying to understand, why isn't that substantial evidence for the idea that, that the claim limitation is not being met? I think because all of those determinations were based on the erroneous finding that this heat fusion must result in single entity, where there is no delineation of the fibers. Once you have heat confused, and they're all one single mass, and there is nothing in the specification supporting that scope of that term. The specification is very clear. You connect using heat. But the specification also makes a pretty clear distinction between using an adhesive with heat versus whatever heat fusion is. An example is something called the hot melt process or something like that. And so if the patent itself is making a distinction between something called heat fusion and something called using an adhesive with heat, then that tells me that whatever heat fusion is, it's something different and probably very likely something more than just adhesive with heat. The specification does not distinguish between heat fusion and glue, for example. On paragraph seven, it specifically talks about that you can have heat fusion and glue, right? You can still have glue just in your presence of glue does not exclude heat fusion. And then there are different degrees of heat fusion, hot melt and heat fusion. We'll talk about column four, where it's column four, line 46, where it talks about the intersecting portions of crisscrossing artificial hairs and that they can be connected using an adhesive. And then that is, i.e., rather than being fused together via a hot melt process. Correct, yeah. And so to me, that reads like we, you know, the patent earlier defines connected very broadly, right? It could be any kind of coupling direct or indirect. And now here, this sentence seems to be identifying two different types of connection. One, which would be using an adhesive and then another, something called being fused together via a hot melt process. What this distinguishes is a hot melt process. There are different degrees of heat fusion that you can achieve using different processes. The specification describes two separate embodiments, hot melt and heat sealing. Hot melt may involve actual melting, heat sealing. So you don't think that sentence makes separate and distinct fusing together versus adhesive? I think that sentence. Would you rather that language? I think this sentence distinguishes the hot melt process, fusing with a hot melt process, rather than fusing generally. Because, you know, later in this application, it talks about creating rash fusion, using adhesive. Alternative embodiment is a fusing together embodiment that's described earlier in column seven. Column seven is devoted to, this is what you do when you want to fuse together these artificial hairs. And you use a hot melt process. And then at the bottom of column seven, in an alternative embodiment, we're going to use some adhesive and maybe put a blow dryer on it. And then that's another way of creating these extensions. Together with heat fusion is below in column seven. It also talks about the clusters in that regard would be heat fused. But I think the question here is, heat fusion is not a one thing and you only reach it by one thing. There are degrees of heat fusion. The court went all the way to the melting portion and said, you have to melt. But sure, heat fusion may be achieved by melting, but it's not required. Heat fusion can be achieved on temperatures way below melting. It does not require melting. All it requires is that there's intermingling of polymers. So you have a connection that was reached due to heat. And so, and that's why that single entity requirement brought in all these other limitations, but no support and intrinsic record. I don't want to be redundant, but just touching upon what, because I think this is important. The centerpiece of the claims instruction that you rely on is really predicated on these two paragraphs and four in column four and column seven. And one could read those as saying, they demonstrate that glue is not enough. We're not talking about glue here. Or they can read the reverse, which is the way you read them. That using that we're talking about just, we're just excluding. We're talking about hot melt process, but we're not talking about heat fusion. So are there other ways other than the heat melt process for heat fusion that are articulated in the spec? Specification also talks about hot ceiling, which is an alternative embodiment. But the question, if I understand it, your honor is to the extent the court is worried that construction may just capture gluing.  Connecting, joining, using heat. That's just not putting glue in between two fibers, right? There is nothing in the specification that excludes glue, right? From heat fusion. You can have heat fusion, you can have glue. One might read these two paragraphs we've been talking about as distinguishing between heat fusion and glue. If they think that hot melt, what they're talking about hot melt is heat fusion. But you're saying that's not true. I think hot melt is a one way of achieving heat fusion. It is not the heat fusion or the only way of achieving, and it's not the only way that. So your view is you should be able to use glue as long as it's with heat. As long as it results in connection between the fibers, right? Because you heated it. And that doesn't get you to a single entity. So here's why single entity is very ambiguous and confusing. These lashes are obviously single entity, right? They're together. But this is not the way single entity was interpreted below and applied. The single entity below was applied, the fibers themselves, the two fibers, you can see that there's still two fibers and not one single mass. That's how the single entity was applied. And the requirement of that was not just that, but the reason why it's there is that it shouldn't be easily separated. How do you determine how something is easily separated when you're dealing with something as delicate as lashes? That's just the form of degree, whether it's lashes or something else. And that's why that single entity requirement was wrong and then applied wrong. Okay. Thank you so much. Thank you.  Good morning. I'm going to be heading back to the international trade commission. May I please request. I'd like to clarify a couple points that my friend made initially first. On the issue of proving significance. Allow where the burden lies. So on the economic prong issue, if the court disagrees and feels that additional activities should have been credited toward classified domestic industry, this would need to be remanded for determination on significance. Just because it wasn't. Challenge does not mean that lashes. I would automatically meet its burden to demonstrate significant investments. Even where all the respondents default in a case, a complainant still must prove that they meet the domestic industry requirements. So in that case, we would expect a remand to the commission for that determination. On the question of what industry would need to be approved. We know under the 2024. Zircon opinion that for each patent, that covers a product. If there's no overlap. You have to prove the domestic industry is met for each patent. So that's part of a problem with fascist. It's economic theory. They're co-mingling all of their investments, alleged investments and all three patents, but all three patents cover separate products. So here that becomes an issue.  On the technical prong. It's the technical prong finding that. The nine eight four patent is not practiced by the domestic industry articles. All of those expenditures are inherently included in this economic prong theory. And lastly, I don't have a separate case. I mean, let's say hypothetically, we say that the IPC is reading those. The domestic prong is wrong. Textual reading. And let's assume that we affirm on the claim construction portion. So it goes back. And I understand your threshold thing is we haven't conceded it. They still have to prove it. But are you saying it's impossible? So we should just leave. I mean, I mean, there are numbers and you can, if it's necessary, you segregate the numbers, right? So what was your point? I mean, but they can't possibly do it or that you win or what?  I mean, that's what it would be that there's no case that last night was brought before the commission that could be evaluated on the individual design patents. And that, that goes to the process that the calculations are used by last night's expert. So while that would be something that needs to be resolved on remand, it could be involved in remand, but it would require a dish of room for additional argument because those arguments just haven't been made. You want to separate the lashes from the case from the installation of tool. That's correct. So all of those patents, each design patent covers a separate product and the utility patent covers only the lashes. So you're not saying that they forfeited their right to make that case because they were arguing all three together. You're not alleging they forfeited that. You're just saying it has to be, it would have to be defined and they'd have to have an opportunity to make it their demonstration on the numbers. Based on the record right now, they would have forfeited it. I believe because they don't have a separate argument for that because of the way that they allocated. I also think that council was incorrect by stating that the commission had accepted their patent allocation. That's also not exactly correct. What the commission accepted was of the many different econ fund theories that Lashify presented, the commission and the ALJ evaluated the allocation that included only the patented products. But the problem that they have is they didn't allocate all of their investments until the very last step. So if you have something, let's look at like warehousing distribution. If you have something like a finishing step for one design patent, that finishing step should not have any of the investments included for the other design patent or the utility patent. But right now that's the record that we have.  Okay. Finishing step. Is that for the case or for the installation tool? It's for the application tool. So this, if we could go back to the warehousing distribution, and I would agree with judge Chen's concerns that any importer could have those costs. So what the commission looks for is additional value added because it has to be an industry. It's a domestic industry requirement. It's not a domestic expenditure requirement. So if we're looking at warehousing distribution, for example, in prior investigations, the commission has evaluated. What's the value added from any domestic additional steps? What you're saying now sounds like, which is fine, that you're now disputing the premise of the discussion we've been having for the last five minutes, which is that labor and capital, even for sales and marketing without any making of stuff here counts. That's actually not at all what I would support. And I don't think the statute supports that either. My point is when we look at the plain language of section 337, it has always required more than selling products. And the statute has never included all expenditure. Just so we're on the same page, until you started saying something about finishing steps of the installation tool, which is probably a simpler name for the installation tool, that you started saying, well, there's no evidence that they were changed in the United States. Until that, we had not been talking. We have been accepting that they're right. And the commission is wrong about the exclusion of sales and marketing. Now, if we want to change arguments, that's fine. But just to be clear, they might have warehouses full of fully finished installation tools that would count if the commission was wrong about the categorical sales marketing. Okay. I think I understand. And I'm sorry if I misinterpreted your question prior. I'm talking about the way that they presented their case below. I was just giving one example of the way that the investments have been commingled in a way. Statutory question. Yes. If that's okay, I would like to address that. So as I mentioned, The statute has never included all expenditures under subsection B. So the plain language proves that because under section 337, relief is available only if an industry in the United States related to the articles exists or is in the process of being established. The plain language also proves that Congress did not include all expenditures in subsection B. Otherwise, subsection C would not have been needed, which expanded the scope of the domestic industry by adding three activities that had previously been included by the commission and this  is a different question. So the three subsections we have are distribution and or servicing, not industries. It depends. So in each investigation, we have to look at the nature and significance of those activities. So in some cases, like for example, the male prophylaxis investigation, there is substantial value added within the domestic activities to make a product saleable within the US. So that might be something we would look at as value added, but typically we're having a distribution is not credited towards an  And we see that even from prior to the ADA. You understand, right? That, that this case presents the question, whether the commission has been wrong for decades. Yeah. So the fact that this is what the commission has done, doesn't answer the question, whether it was right or wrong in doing it. Absolutely. Thank you. I agree. I would just say that when we're looking at the 1980 amendment, which was the last major amendment, it actually codified prior commission practice. So subsection a plant and equipment that comes from a 1978 commission decision and luggage investigation. Labor and capital and subsection B comes from a 1980 commission decision in the airtight cast iron soaps. So Congress was aware of what the commission was doing. We weren't crediting all activities in an industry and chose to codify the language that we've been using. Subsection C was added to expand the scope, but we were excluding, the commission was excluding a number of activities and Congress chose to only add three of those engineering, licensing, research, and development. So marketing, for example, had been excluded in the shopper case and other in other investigations. And Congress did not add that to the 1980 amendment of the statute. Can I ask your position or the commission's position is that marketing you can include sales and marketing only if there are quote sufficient other qualifying expenditures? Well, if there are sufficient other qualifying expenditures, then why do you need sales and marketing? If there's sufficient, then that means you'd never need to look at the field. So it just makes no sense to me at a common sense level, what you're talking about. Thank you. That's a good comment. It's true. And that's why when we say, the test doesn't make any sense. I'm sorry. I wouldn't. The commission is reasonably relied on the statutory tools of interpretation and Congress's intent from the legislative history. But when we're looking at things like sales and marketing, we know that the commission that the Congress has told us sales and marketing alone would never be enough. So if we were to read subsection B as last, I argue that it includes all expenditures. We could end up with a situation where a complainant can prove a domestic industry based on sales and marketing alone. That's exactly contrary. That's not what you're saying. That's just not what I'm talking about. What you're saying. We're not talking about sales and marketing alone. We're talking about the commission's position is you can count them, but only if there are sufficient other expenditures. And that makes no sense. So I think the issue might be in whether we're counting versus we're not excluding. Other qualifying expenditures sufficient to establish a domestic industry, which means that under your test, you never look at marketing and sales. Correct. It would never be credited towards the domestic industry. So let's say we're in a situation where a complainant has other expenditures, but they're not included in their sales and marketing, that would not be sufficient to prove the domestic industry requirement is met. Yeah. Except that the language we're talking about is sufficient other qualifying expenditures. Anyway, we can move on. Okay. I would just note for other, we look at things that are more traditional industry expenses or the things that are shown to add value. What are those other so-called traditional expenses that count as qualifying expenses? So we know that.  Production is a cornerstone of course. And we can see from the addition of the 1988 amendment, engineering, licensing, research and development. The commission looks at a value added analysis. So when we're looking at the nature and significance of the complainants activities, we look at the facts of investigation, the article of commerce and the reality of the marketplace, because sometimes we may have cases where there's substantial production type value that's added domestically. And where in that does a sales force of people who not only persuade a purchaser to buy, but also teach the purchaser how to use FIT? If I could separate those two just really quickly. So persuading to buy, just simply sales. Sales has always been a problem because it could be something that an importer would do. This is a trade remedy. Section 337 provides trade relief. So if you're simply selling the product in the country, you should not be entitled to trade relief before the commission. There are other options like district court that you could pursue. If we're talking about whether your, I would say, customer education or things like that, it's not necessarily marketing in the cases where it's credited. So for example, the IVF investigation. There's a good example there because there's both education that was credited, very specific to a doctor, on how to use the article in question. And then there was general continuing medical education that was not credited because it was just a general expense that someone who's selling a medical product may need to reach a doctor or the public about their product. So you can think of it, I don't know about the spectrum, when we're looking at each investigation. I don't remember the facts even. I'm not even sure they were developed, but anyway, I don't remember them. So suppose Lashify has, you know, 500 salespeople and they go around and they show people how to put these lashes underneath the natural lashes. What's that? I would argue that is sales and marketing. And that's actually how Lashify characterized it as well. That was sales and marketing. And you think it doesn't count? I don't believe that that should count towards the domestic industry. I think that's something where if we're simply having people who can pay social media influencers or pay Amazon fees, that's not an industry within the United States that requires protection. But now you changed the example. My example was you've got 500 people who, I don't know, like malls or wherever, they actually show people how to put these things on. That's not just the things you switch to about influencers. So even if you're employing people to show people how to do it, though, it depends on the facts of the investigation. So here I believe you're talking about someone demonstrating how to apply a false eyelash, which I would argue would be a completely different set of facts than places where we have credited customer service, like in the usage and the technical aspects of like an IVF drug, for example. This was not. Things that would be sorted out on remand. It could be. I mean, this is the type of thing that it should have been argued below. We also have just a lack of evidence from Lashify on quantification for all these issues as well. So we have a qualitative case. I think your honors are exactly right that most of their cases built on the qualitative argument. And we know from Lilo, qualitative factors alone are not enough to prove a domestic industry. They could have quantitatively identified their research and development or their pre-startup activities, but they came in with that information too late. I don't think anyone is saying qualitative alone. So I guess I don't like, it makes me nervous when we start setting up straw mat. Do you agree that qualitative factors can be included in the significance test? I believe Lilo states that for quantitative significance, if you have modest or insignificant investments, you cannot rely on qualitative factors to, to overcome that lack of quantitative evidence. So under Lilo you need both. Under Lilo you need both. So here, the commission did credit the research and development investments that Lashify was able to quantify, but that amount was not even modest compared to the others. The commission didn't comment on whether the qualitative factor was satisfied here. Is that right? It was pretty much purely a quantitative factor analysis. It was a quantitative factor analysis because there was not significant quantitative evidence to be able to allow us to take that next step into looking at a qualitative factor. Actually excluding the sales and marketing and warehousing costs. That's correct. But you need to reach a certain threshold in quantitative before you jump over to including qualitative. Is that what you're saying? Is that the way the test works? I agree. Okay. One thing you said, I'm not sure I take issue, which is that if you have no quantity, you can't rely exclusively on quality. But are you saying there has to be a specific point? You have to reach a specific level of quantitative before you can jump over to qualitative? And what is that specific level? I think you'd have to be able to show at least some quantitative significance before you can jump over to qualitative. Because otherwise that would run the follow-up, this court's instruction to the commission in Lelo, where modest or insignificant investment, we couldn't go to qualitative in that particular case. Before we turn, we should turn to claim construction. But before we turn there, I just want to clarify that because you made the point repeatedly that they hadn't made their case. And part of that was because they mixed together all of these. So in fact, if the claim construction is correct, that's a problem. Are we agreed that they would have a further opportunity on remand, given what we do here to reconfigure the amounts and the numbers and the product with respect to the products and so forth? I think the commission will follow whatever instruction this court gives. And I don't want to speak on behalf of the commission as far as how to remand the specifics of it, like if additional briefing, or I believe the commission can sometimes even remand an investigation to the administrative law judge if additional fact findings are necessary. So I don't want to presume to speak. So there's additional briefing, additional fact finding, and additional evidence. I think we're chiefly talking here about additional evidence that is possible, but only if we order it. I mean, if you order it, obviously the commission will follow the court's instructions. I'm stating the remand, different times the remand, it depends on which issues are being remanded and what instructions the court has given as far as how the commission can execute the remand. I hope that answers your question. Okay. Unclaimed construction. Can you point me to the best disclosure you have in the patent that suggests there's a single entity requirement for heat fused? So I would point to the claim language itself. I think it's actually very strong when it talks about creating a heat fused connection. And I think that the specification as well, I hate to hit on that point, but we were talking about, you know, I agree completely with judge Toronto that fused means more. It has to mean something. So if we look at the claim language itself, we have a first heat fused connection and that's between the first artificial hairs. So therefore we no longer have separate artificial hairs. Now we have connected artificial hairs in a single entity. And the reason why that language was even added was to address some of these issues on that glue or cured glue itself is just simply not enough. Okay. But that, so you think that heat fuse, the single entity is not drawn out explicitly in the patent, but it necessarily follows as part of the definition of heat fuse. Because when I asked you where they tell us single entity, you direct me towards heat fuse. I'm not sure if you may be right, but is that it? I think maybe if I'm, let me make sure I'm understanding. We're trying to understand the name fused in the context of this patent. So pointing us to the word fused in the patent doesn't by itself tell us enough about what is fused actually mean in the context of this patent. I understand. I guess maybe I would point more to the connection that you're, you're creating something. It's not just a process patent. We're talking about, even if we go to column seven, which we've spent a lot of time talking about, once the, once there is a connection between individual artificial hairs, it becomes something else like a cluster. For example, you're not suggesting all connections are fusions, are you? No. I think that the word connection doesn't quite get us there either. Okay. But I think that if we look at something like cluster, that's another example. If we go from individual hairs. By gluing them, gluing the individual hairs together though, right? Not under the claims that are asserted. So under the claims that have been asserted in the investigation requires that the artificial hairs are heat fused together. And I'd also note that at the end of the bottom of column seven, which, which my son kept pointing to when it's talking about gluing, it's actually talking about gluing clusters together, not artificial hairs. So we need to step back through how these are actually put together. We start with individual artificial hairs. There has to be a heat fuse connection of those artificial hairs. And then that let's call it a cluster. That's creative. That cluster can be either attached to other clusters with a common base. And that connection could either be through heat fusion or could be through glue. Is there any difference in your view between the claim, like claim one that talks about heat fused connection and other, other claims that talk about the hairs being heat fused without the word connection? Yes. I would agree with you that there are claims that use the other language. For example, claim 23, which is also assertive, state that the end portions are heat fused together. But again, we're talking about. I'll just tell you what I'm, what I was, I guess, musing about. So without the word connection, it seems to me, the hairs have to be fused, not end to end, but some portion of it. With the word connection, it seems to me there's, I don't know, more running room for lashify that the hairs are being connected. And maybe the connection is doing the fusing with heat, but I'm not quite sure that heat fused connection carries quite the implication of just heat fused fibers. And I don't remember whether in this court or in the commission or before the ALJ, anything was made of that difference in language. From my memory, there was no difference because when the claim construction briefing and the construction hearing before the ALJ, the parties agreed that those heat fused terms would all be construed together. Initially the parent application for the 9-8-4 patent was also in the investigation and then it dropped out due to some determination finding. But the heat fused terms that were used in the 3-8-8 patent and the 9-8-4 patent, the parties agreed that those should all be construed the same. So I think when we're talking about a heat fused connection. What I keep thinking about is the key thing at issue is you put two fibers next to each other, you put a bunch of glue between it. The glue doesn't set without heat. You use heat to make the glue set. And I think the dispute here is whether that's covered or not covered. I think that's fair. I think that is probably easier to get with heat fused connection than just heat fused fibers. And that's, I guess, the point I'm inquiring about, but I don't recall seeing discussion of that. I don't believe that that was specifically discussed because I think that heat fuse is, has been the top of that discussion because of the glue issue, which your honor identifies correctly. The construction that the ALJ came up with was specifically meant to limit this to heat causing the fusion. Of the fibers. Of the fibers. So when we're talking about using heated glue, if that's, I agree with your honors for column 7, column 4, there's a clear distinction between those in the specification. We can also look at the prosecution history of this. Before you read the claims, the column 7 and the column 4, do you disagree with your friend that when the reference in both of those to hot melt process was just one aspect of heat fusion, or was the patent owner talking about heat fusion here when they talked about hot melt process? I think my interpretation is that, and I think the ALJ finding was that that talks about the heat fusion process altogether. It's not talking about a subset of it. We know heat seal is a process that would then use possibly temperature and pressure. The ALJ's construction was not exclusive of ways to obtain the heat that would be required to have heat fusion. Thank you. Thank you. Okay, Mr. Hall, we've got you for five minutes. We obviously don't want to go on over territory. I'm well aware of the timing, your honor, but may it please the court, Michael Hobbs for the interveners, Kissel, Salon, Walmart, and CVS. Given the time, I'd like to focus on a question I think is really important. And you raised it, Judge Chin, which is if the technical prong is not met, how does that kind of ripple through the rest of the case? I think it's really important because what we don't have here is an appeal to key issues. First, there's no appeal of the findings regarding the manufacturing process that was used by Lashcon. And I'll point the court to appendix page 22. So for the first manufacturer, the ITC found quote joined with glue comma, not heat quote. It doesn't matter which construction you use. That's sufficient. And that's a finding that was not challenged. So that let me get to the second one. The appeal is that there is heat involved in the process of making these lash extensions, either from manufacturer one or manufacturer two. They asserted that, and they had an expert report, but that's the finding of the commission is that what the joining uses glue, not heat, with regard to one of the manufacturers. And we're talking about one of them right now, but that's the finding is not challenged on appeal. So from this court's point of view, when it's not challenged on appeal, that finding is how we address the appeal. So that's on page 22. And I'll get you the exact thing on the page. So you're looking for it. It's right at the bottom, your honor. If you look at the very last statement, respondents evidence confirms that I don't use the confidential term. We're joined with glue, not heat. That's a finding of the commission. So let's move to the second manufacturer. This commission opinion is actually a majority. So the second manufacturer is page 26. And the analysis actually changed to the second manufacturer on page 23, but the key language is on page 26. And this is something that has been discussed, which is these fibers are coming down and they're not connecting at all. And this is the language you'll see at the bottom of the first paragraph where the commission concludes that they are pushed into and held in place by the base. So that's important because in the claims, the only claims, which are claims one and 23, that were asserted as the basis for technical problem by last fall, the connection has to be between the fibers. I'm sorry, just to be clear. These are manufacturers for lashify. So this is for technical problems. Exactly.  So, but the words that cannot be spoken, they have a theory that application is involved. So for this one, but they're arguing in their appeal, but then they are not challenging these particular findings. And for this one, the issue isn't heat. The issue for this manufacturer on appendix page 26 is whether there's any connection between the hairs. What they found using cross-sectional photography was that the hairs go all the way down and are inserted into the base. And if you look at the claims that they're relying on for technical problem, specifically claims one and 23, there has to be a connection between the hairs. Now separately, those hairs of course become clusters and the clusters are connected, but that's separate in the claim. Each of those claims has two paragraphs. First paragraph tells you there's a connection between the hairs. I hope you recognize the difference between 22 and 26. 22 has this fairly clean phrase from your point of view. Respondents evidence confirms that the manufacturer one product were joined with glue, not heat. And the other one, 26 says, the fibers are pushed into and held in place by the base. The base physically holds the fibers, despite there being no heat fused connection between the fibers. That's right. So that's a more limited point. Well, I mean, if you look at the discussion, the point with the cross sections, we never get to the heat question. The fibers come down into the base without ever touching. They're not connected between because they're put into the base rather than having a connection fiber to fiber, fiber into base, base holds them relative to each other. And the claims both one and 23 have separate requirements, a requirement for how the fibers are connected to each other. And then in the second paragraph, a requirement about how that base is put together. So the point here on there is this whole claim construction issue we have doesn't reach the findings. And because the findings by themselves, I believe their construction support the commission. You can affirm that there's no technical problem here with regard to the mining. Now that leaves us with the design patents and you asked the key question there, which is if you don't have the money for what happens with regard to the design patents. And the one point that hasn't been discussed, I think is really important is that last is very much depending on the dissenting commissioners. But if you look at the opinion of the commissioners in dissent, there is a key issue, which is that they found that the design patents by themselves, that the articles corresponding should be the entire system, not just the occupier, not just the container, the entire system. Obviously that was the dissent. That was not the commission. And the commission specifically, as it always does, says, we're adopting what the final initial decision said, except for it's inconsistent. And it is not inconsistent. And the final initial decision found that each of those design patents was not entitled to rely on the entire system only on what was shown in the design patent, the applicator and the storage case. Why should I have an appeal that determination, even though it was a linchpin of what the dissenting commissioners were doing, which means in their appellate brief, they needed to show how there wasn't substantial evidence to find that the specific economic industry associated with the design patents was sufficient and they never did that. So we're left with a situation where they made two key decisions not to appeal. They didn't appeal the findings with regard to their manufacturing process findings that whatever the claim construction resolved the case. And they didn't appeal the determination that the design patents are not properly associated with all of the expenses of the system. And as a result, they haven't put. Under the hypothetical, if we reverse the commission, construction of the text of the statute and say they're wrong on sales and marketing, yada, yada, but we affirm the claim construction on appeal. What is the impact of that? Because we were talking about with your friend from the ITC was that they get to go back. Now that the, the chairs have been switched off over, that we, they get, they get to go back and make a further showing that just the amount allotted to the two standing patents are sufficient or  I disagree with that. The economic industry is regarded each of the patents they were asserting. They tried to do that by saying this patent should be associated with the whole system. The FID said, disagree with you. And they have not appealed that point. So that's a failure. And it's a failure proof that they had, they had the chance to put on the proof. They even had the chance on appeal to come to you and say, the FID was wrong. Those design patents really do correspond to the whole system and they didn't do. So you're left with a situation where they didn't appeal the key of findings on technical problems. And then because that was the 984 out, they aren't appealing and they didn't appeal. The design patents don't correspond to the evidence they put on below the only evidence they put on board. And that's why you should affirm because there just isn't evidence that would allow them to find domestic industry with regard to the design patents without that system capture point that the dissenting commissioners put forward that they haven't supported on it. Haven't even tried. So the respondents, just also salon Walmart and CVS or Dirk's court to affirm on the basis. There isn't a prejudicial error shown by. Thank you. We always store five minutes for rebuttal. If you need it. Thank you. Could you lead with that? Yeah, that was raised by the show. Are you in some kind of hopeless conundrum because your evidence didn't break it out sufficiently enough or if the hypothetical you didn't make the grade. I respectfully disagree with my colleague on the other side. What happened below and I should I put three separate allocations in one of some of those allocations that didn't look at the last fight system as a whole. Now the commission rejected their flash for a system as a whole allocation. It accepts it. One allocation was respect to how the numbers were allocated per patent. And that's the second alternative allocation. So in that second alternative allocation was not based on my system on the whole, the commission below said, this is the allocation that uses the correct products in each patent bucket. This is the only allocation we put up for us on appeal. What does the sentence said? Well, not only the second allocation was crap, but even the broader one should have been considered by the commission. The first alternative allocation that should have included additional products to make the PV here. We don't need that. So I would appeal the second alternative allocation, which the commission did not have any issues with how the products were allocated per each patent. Did the ALJ or the commission make a determination of the significance for each of the two design patents of the investments under the second allocation The reasoning for the significance was the same for all three allocations, including for the second allocation. Excludes and that's, you ask women's significance. So that's the issue with the second point for allocation. So if, if this court decides to remand, there is no failure, prove the numbers below. If the commission needs more, we're obviously available to give them more in whatever guidance the court provides to the commission. Do you think that you would benefit from, or are you asking for us to say that the commission should give you an opportunity to present additional evidence? I think if this court remands for the analysis of substantiality and not just the firms, then I think I asked that we have an opportunity based on, because I don't know yet what the opinion is going to say, that if we need to present additional evidence below in light of the new standard or new guidance to the commission, that we can address that and present evidence with respect to how to allocate it. And wouldn't really be new evidence, right? I mean, you put the numbers in, it's a question of your slicing and dicing, whatever the numbers were to fit the new category. That's exactly right. Yes. Yes. Correct. As it might entail new expert testimony, which would be evidence for example, right? That would need that. So that's with respect to the domestic industry issue. With respect to the claim construction issue, I just have one couple of brief points, pages 22 and 24 that my colleagues on the other side mentioned, they all predicate on the single entity requirement. And if you actually look at the opinion, like on 20, page 22, in the middle, they say, well, in this particular process, the welding process, the temperatures do not rise to the level to reach heat fusion. And then later, and it has a string of definitions of that welding as requiring melting. But if you also look at the claim language, and Ioana pointed that claim one, for example, says he has heat fuse connections, right? So the condition below was an opinion that glue has to be excluded completely from the analysis of heat fusion, but there are different types of glues. And there's nothing in claim one that precludes a product from having a heat fuse connection. For example, glue between the fibers, right? A fiber can have a heat fuse connection with the glue because you chose to use a specific polymer glue that reacts to heat in the way that heat fusion occurs. So claim one, all it requires is for two fibers to have heat fuse connections. You can achieve those heat fuse connections by picking a specific polymer glue and getting heat fuse connections between fibers and the glue, for example, and that would be within the scope of claim one. The way that the court construed the term and then applied the term completely excluded, for example, that scope from claim one and said, you have to have two fibers melted together into a single entity where the single entity definition was, so it's not easily separated. No support in the intrinsic evidence. And the intrinsic evidence talks about, the patent talks about that you apply heat so the lashes can begin to fuse, for example, right? So beginning of fusion is heat fusion, right? The final stage of pure melting, that may be a degree of heat fusion, but that's not the only heat fusion that's within the scope of the claims with respect to that. And all the findings below with respect to domestic industry were fundamentally rooted in the construction of the requirement of the single entity. So it's not easily separated, followed by interpretations that that requires melting and everything becoming one single mass. And so these factual findings that my colleague on the other side mentioned, they're just wrong because they're based on the wrong construction. So if the construction is corrected, the commission below has to perform a different analysis. You have a number of confidential markings in the Joint Appendix. It's a little bit challenging to potentially run an opinion. Are you, is there a way you can take a second look at some of these markings? Or are you confident that you have to keep all of them? There was a, there was a district court, there was a trial a few months ago that some of this information became public. We absolutely can take a look. And now in light of that record and see what we can underdoctor, if the court would like us to do so. Thank you. Thank you. Thank you both sides for cases.